1

2

3

4

5

6

7

8                        IN THE UNITED STATES DISTRICT COURT

9                       FOR THE EASTERN DISTRICT OF CALIFORNIA

10   UNITED STATES OF AMERICA,

11              Respondent,                    No. CR S-01-0264 MCE GGH

12        vs.

13   NOEL BRAVO-SOSA,

14              Movant.                        FINDINGS AND RECOMMENDATIONS

15   _____/

16   I.  Introduction

17              Movant is a federal prisoner proceeding pro se with a motion to vacate, set aside

18   or correct his sentence pursuant to 28 U.S.C. § 2255.  Movant challenges his 2003 conviction

19   following a jury trial for three counts of distribution of cocaine base in violation of 21 U.S.C. §

20   841(a)(a)(counts 1-3) and one count of possession with intent to distribute cocaine base in

21   violation of 21 U.S.C. § 841(a)(1)(count 4).  The jury also returned special verdicts finding that

22   with respect to counts one and two that movant distributed five grams or more of a mixture or

23   substance containing a detectable amount of cocaine base.  The jury returned a special verdict as

24   to count three finding that movant distributed fifty grams or more of a mixture or substance

25   containing a detectable amount of cocaine base.  The jury found as to count four that movant

26   possessed with intent to distribute fifty grams or more of a mixture or substance containing a

detectable amount of cocaine base.

Movant was originally sentenced to 293 months imprisonment.  On July 23, 2008, movant was resentenced to 240 months.

The instant motion raises three claims of ineffective assistance of counsel and one claim of ineffective assistance of appellate counsel.  After carefully considering the record, the court recommends that movant's motion be denied.

On April 27, 2007, movant filed a motion to supplement his reply to respondent's opposition.  This motion is granted.

II.  Legal Standard for Ineffective Assistance of Counsel Claim

A claim of ineffective assistance of appellate counsel utilizes the same Strickland standard that is applied to trial counsel.  Smith v. Robbins, 528 U.S. 259, 287, 120 S. Ct. 746, 765 (2000).

The test for demonstrating ineffective assistance of counsel is set forth in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052 (1984).  First, a petitioner must show that, considering all the circumstances, counsel's performance fell below an objective standard of reasonableness.  Strickland, 466 U.S. at 688, 104 S. Ct. at 2065.  To this end, the petitioner must identify the acts or omissions that are alleged not to have been the result of reasonable professional judgment.  Id. at 690, 104 S. Ct. at 2066.  The federal court must then determine whether in light of all the circumstances, the identified acts or omissions were outside the wide range of professional competent assistance.  Id., 104 S. Ct. at 2066.  "We strongly presume that counsel's conduct was within the wide range of reasonable assistance, and that he exercised acceptable professional judgment in all significant decisions made."  Hughes v. Borg, 898 F.2d 695, 702 (9th Cir. 1990) (citing Strickland at 466 U.S. at 689, 104 S. Ct. at 2065).

Second, a petitioner must affirmatively prove prejudice.  Strickland, 466 U.S. at 693, 104 S. Ct. at 2067.  Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at

694, 104 S. Ct. at 2068.  A reasonable probability is "a probability sufficient to undermine

confidence in the outcome."  Id., 104 S. Ct. at 2068.

In extraordinary cases, ineffective assistance of counsel claims are evaluated

based on a fundamental fairness standard.  Williams v. Taylor , 529 U.S. 362, 391-93, 120 S. Ct.

1495, 1512-13 (2000), (citing Lockhart v. Fretwell, 113 S. Ct. 838, 506 U.S. 364 (1993)).

III.  Discussion

A.  Claim One

Movant argues that his trial counsel was ineffective for failing to demand that the

government file a motion under U.S.S.G. § 5K1.1.  Movant also claims that his appellate counsel

was ineffective for failing to argue on appeal that he was entitled to a sentence reduction pursuant

to this section.  The background to this claim is as follows.

*Background*

As noted by respondent in the opposition, on several occasions prior to trial,

movant attempted to plead guilty to a government offer to recommend 150 months incarceration.

At the February 4, 2003, change of plea hearing, movant's counsel stated that movant was

reluctant to initial changes to the plea agreement:

> Counsel: Your Honor, we're having a discussion, Mr. Sosa–or Mr. Bravo-Sosa
> had executed a plea agreement.  However, it was determined that after he had
> signed it that the maximum penalty was 40 years not life imprisonment, and that
> the maximum fine was two million dollars, the minimum penalty was five years
> not ten years, and it was three parts additional.  That's on page four, your Honor.
> Mr. Sosa is reluctant to go initial these changes thinking it's going to change the
> agreement of 150 months that he agreed to.

Opposition, Exhibit 2, p. 4.

The court then found that movant was not ready to proceed and continued the

matter to February 11, 2003.  Id., pp. 5-6.

At the February 11, 2003, change of plea hearing, movant's counsel told the court

that movant indicated to him that he did not wish to go forward with his change of plea.

Opposition, Exhibit 3, p. 3.  Movant went on to tell the court, "Because my attorney has forced

me sign my initials without explaining to me that I was signing for a maximum of 40 years." Id.,

p. 5. Movant's counsel then stated,

> Your Honor, that is absolutely incorrect. What it was is that Mr. Sosa had entered into a plea agreement in which there was a technical error in which the maximum penalty was listed as life. It should have been 40 years as a maximum penalty. The minimum penalty was listed erroneously as ten years, and that was changed or altered to read five years. Plus the term of supervised release was reduced from five years to three years. Mr. Sosa seems to feel that, at least in my discussions, that he has now agreed to 40 years in prison. That is absolutely incorrect. Misunderstood it. And that was explained to him in great detail that that was only the maximum sentence that this court could impose.

Id., p. 5.

The court then set the case for trial. Id., p. 7. At the April 8, 2003, trial confirmation hearing, movant's counsel told the court that movant wanted to plead guilty to the offer previously made of 150 months. Opposition, Exhibit 4, p. 4. The court then set the matter for trial and a status conference so that movant's counsel and the prosecutor could prepare a new plea agreement. Id., p. 6.

On April 15, 2003, a further hearing was held. At this hearing, movant's counsel told the court that movant did not want to enter any plea agreement. Opposition, Exhibit 5, p. 3. Movant's counsel told the court that he had tried to explain the agreement to movant several times with certified interpreters. Id. Counsel told the court that movant was adamant that he was not going to sign for 40 years, which is the maximum penalty. Id. The court then discussed the matter with movant:

> Court: Is the recommendation of the Government to the Court going to still remain at–it was how many months–
>
> Counsel: 150 months.
>
> Court: –150 months?
>
> Prosecutor: Yes, your Honor, it would under the current draft of the plea agreement.
>
> Court: Mr. Bravo-Sosa, do you understand what we're saying at this point?
>
> Movant: Yes. But it is not 56 grams. It's 48 grams.

Counsel: Less than 50.

Court: Let me go over this again.  You originally signed a plea agreement back in January where you initialed every page, signed the last page, and agreed that you had had this agreement interpreted to you in Spanish, and you understood it; do you remember that?  I'm not asking for an explanation.  I'm asking: Did you or did you not sign this agreement in January?

Movant: Because he didn't tell me the truth.

Court: The interpreter apparently interpreted the agreement for you, is that correct?  In Spanish?

Movant: The interpreter who they are giving me now, sometimes he doesn't say things to him right.

Court: All right.  The bottom line is this agreement alleges that you had 48.52 grams of cocaine base; do you understand that?

Movant: Yes.

Court: It does not allege that you had 50 or more grams of cocaine base; do you understand that?

Movant: Yes.

Court: The maximum possible penalty for having 50 or more grams of cocaine base is life imprisonment; do you understand that?

Movant: Yes.

Court: The maximum amount of imprisonment time for having less than 50 grams, which is what you're accused of having, is 40 years; do you understand that?

Movant: Yes.

Court: The Plea Agreement called for a recommendation by the Government, based upon your cooperation, of no more than 150 months; do you understand that?

Movant: Yes.

Court: And that means that it would be twelve years and six months maximum based upon the Plea Agreement; do you understand that?

Movant: Yes.  Tell him that it's fine, but I want to go to trial anyway.  There's people who have been caught with pounds and pounds, and they give them less than twelve years.  Ten years.

Court: All right.  Just as long as you understand that you're looking at 40 years,

and that that is going to all be taken into consideration when you go to trial, and that this Court will have the opportunity to sentence you up to 40 years.  The only reason why the Court would not sentence you to 40 years based upon this plea agreement is if you cooperated.  And if you don't want to cooperate and enter into the plea agreement, that's fine.  We will go ahead and set this matter for trial.  But I want to make sure that you know exactly what the situation is.  Because it seems there's been confusion almost every time that you've been in this courtroom as to whether or not you're going to enter the plea agreement or not enter the plea agreement.

Before I go through and set this matter for trial and have you come back again and say you want to enter the plea, I want to make sure that I hear from your mouth, which I've heard, that you understand exactly what is happening.  Do you feel that you understand; is that correct?

Movant: I understand really well, but I looked in that blue book, and the maximum in that blue book is 210 months.  So how's that?

Court: What blue book.

Prosecutor: I don't know what he's talking about. There is a version of the Sentencing Guidelines that has a blue cover, but that's not the one that would apply to this case.  But other than that, I don't know what he's talking about.  Just to clarify one thing, your Honor, if the defendant does decide to go to trial, under two of the counts that would have been dismissed had he pled, the maximum will be life if he is convicted.

Court: Do you understand that?

Movant: Yes.

Court: All right.  And you want to go to trial, is that correct, and look at the possibility of life imprisonment?

Movant: Because I know the last is telling lies, and the officer is lying.

Court: You're going to trial, and I will not accept any further plea agreements or offers.

Id., pp. 4-8.

The plea agreement originally signed and initialed by movant on January 28, 2003, stated that the government would file a motion pursuant to U.S.S.G. § 5K1.1 in which the government would request and recommend a sentence of 150 months imprisonment based upon movant's cooperation to date.  Opposition, Exhibit 6, p. 3.

/////

6

*Analysis*

Movant contends that trial counsel was ineffective for failing to demand that the government file a motion under U.S.S.G. § 5K1.1.  Movant may also be claiming that counsel was ineffective for failing to adequately explain to him that if he went to trial, he would not be eligible for the § 5K1.1 departure.  In support of both of these claims, movant contends that he is functionally illiterate and had a breakdown of communication with trial counsel.  Movant also contends that during his criminal proceedings, he was provided with different interpreters who could not discern and translate the complex proceedings without trial counsel's assistance.  Petitioner contends that the record shows that trial counsel failed to adequately assist the interpreters.

While the government had offered to make a motion for a downward departure pursuant to U.S.S.G. § 5K1.1. in the plea offer, movant rejected this offer and chose to go to trial instead.  The government had no obligation to file a motion pursuant to U.S.S.G. § 5K1.1 once movant decided to go to trial.  Therefore, trial counsel was not ineffective for failing to demand specific performance of the plea agreement.  Appellate counsel was also not ineffective for failing to raise this claim on appeal.

Movant's claim that counsel was ineffective for failing to explain to him that he would not be eligible to have his sentence reduced pursuant to U.S.S.G. § 5K1.1 if he went to trial is not supported by the record.  The court made clear to movant in the careful colloquy quoted above that by going to trial, he would not receive the benefits of the plea agreement.  The court explained to movant that he risked a much longer sentence if found guilty following a jury trial than what was being offered in the plea agreement.  While movant may not be educated nor a native English speaker, it is clear from the transcript quoted above that he understood the choices he faced and the potential consequences.  Movant's stubbornness is not to be laid at counsel's doorstep.  However, even if counsel failed to adequately explain the consequences of rejecting the plea agreement was cured by the court.  This claim of ineffective assistance of trial

7

and appellate counsel is without merit.

In support of the instant claims, movant cites U.S. v. Leonti, 326 F.3d 1111 (9th Cir. 2003).  In Leonti, the Ninth Circuit found that a defendant could state a colorable ineffective assistance of counsel claim based on counsel's failure to be a meaningful advocate during the defendant's attempted cooperation with the government.  326 F.3d at 1122.  In Leonti, the defendant had entered a plea and attempted to cooperate with the government.  326 F.3d at 114-116.  The instant case is distinguishable from Leonti because here, movant did not enter a plea agreement providing for a downward departure pursuant to U.S.S.G. § 5K1.1.

B.  Claim Two

Movant argues that his counsel was ineffective for failing to object to the government's motion to amend the indictment.  The background to this claim is as follows.

The original indictment charged movant in counts one and two with distributing "at least 50 grams of a mixture and substance containing cocaine base..."  Opposition, Exhibit 7, pp. 1-2.  The purpose of this language was to give movant notice that if convicted he would be subject to the enhanced statutory penalties provided under 21 U.S.C. (b)(1)(A)(iii).  On the morning of trial, the government filed a motion to amend the indictment.  Section 2255 Motion, Exhibits, court file p. 107 of 146.  The government moved to amend the amounts alleged in counts one and two from "50 grams or more" to "5 grams or more."  Id., pp. 107-112.  The motion to amend was made after a laboratory expert weighed the cocaine base relevant to counts one and two and determined the amounts to weigh 48.52 grams and 48.94 grams.  Id., p. 108.

Movant's counsel did not object to the motion to amend the indictment.  The court orally granted the motion to amend.

Movant argues that his counsel should have objected to the motion to amend on grounds that it sought a constructive amendment or fatal variance to the indictment.  To put this argument in context, the court sets forth the following legal background.

\\\\\

1        The Fifth Amendment guarantees a criminal defendant "[the] right to stand trial

2    only on charges made by a grand jury in its indictment."  United States v. Adamson, 291 F.3d

3    606, 614 (9th Cir. 2002).  "An amendment of the indictment occurs when the charging terms of

4    the indictment are altered either literally or in effect by the prosecutor or a court after the grand

5    jury has last passed upon them."  Id.  A constructive amendment occurs where there is a

6    "complex of facts [presented at trial] distinctly different from those set forth in the charging

7    instrument," or when "the crime charged [in the indictment] was substantially altered at trial, so

8    that it was impossible to know whether the grand jury would have indicted for the crime actually

9    proved."  United States v. Von Stoll, 726 F.2d 584, 586 (9th Cir. 1984).

10       A variance is found where the indictment and proof at trial involve only a single,

11   though materially different, set of facts.  Von Stoll, 726 F.2d at 586.  A variance does not require

12   reversal unless it affects the substantial rights of the defendant.  See United States v. Adamson,

13   291 F.3d 606, 616 (9th Cir. 2002).  In Von Stoll, the Ninth Circuit found a nonfatal variance

14   where the indictment charged the defendant with "transporting in interstate commerce $10,000

15   that was taken by fraud from Ron McCallum" but proof and instructions allowed the jury to

16   convict him of taking $10,000 from McCallum's business.  726 F.2d at 586.  The Ninth Circuit

17   found a fatal variance in United States v. Tsinhnahijinnie, 112 F.3d 988 (9th Cir. 1997) where the

18   indictment charged the defendant with sexual abuse of a child occurring on an Indian reservation

19   during the summer of 1992, but proof fluctuated between placing the abuse at a place and time in

20   the indictment and placing it off the reservation in 1994.  112 F.3d at 990-992.

21       The instant case involves neither a constructive amendment nor a variance, fatal

22   or not.  Rather, the indictment was formally amended, in essence, to charge movant with a lesser

23   included offense.  This amendment was technical and did not charge a different offense – it just

24   set up a less severe penalty sanction which did not have to be re-pled.  Fed. R. Crim. P. 31(c)(1).

25   See e.g. Sansome v. United States, 380 U.S. 343, 350, 85 S.Ct. 1004, 1009 (1965) (a defendant

26   need not be charged with a lesser included offense in order to be guilty thereof); see also U.S. v.

9

1   Streit, 962 F.2d 894, 899-900 (9th Cir. 1992) (when grand jury indicted on count one, it

2   necessarily included the lesser included offense).  For these reasons, trial counsel was not

3   ineffective for failing to object to the motion to amend the indictment.

4           Movant also argues that the original indictment limited the total amount of

5   cocaine base for which he could be convicted to 200 grams.  As stated above, the original

6   indictment charged movant with distributing "at least" 50 grams of cocaine base, as to counts one

7   and two, i.e. no less than 50 grams.  The original indictment contains no language limiting the

8   amount of cocaine base movant was charged with distributing.  Therefore, movant's claim that

9   counsel was ineffective for failing to object to the motion to amend the indictment on grounds

10  that the original indictment limited to 200 grams the amount of cocaine base he could be

11  convicted of distributing is without merit.

12          C.  Claim Three

13          Movant alleges that his counsel was ineffective for failing to make several

14  objections to the presentence report.  Movant first contends that counsel should have objected on

15  grounds that it increased the total amount of drugs to 357.6 grams.  Movant contends that the

16  original and amended indictment limited the government to proving 200 grams.

17          Neither the original nor amended indictment limited the government to proving a

18  certain amount of cocaine base.  Rather, the original indictment charged movant with distributing

19  at least 50 grams and the amendment indictment charged him with distributing at least 5 grams or

20  more.  Any objection by trial counsel to the presentence report on the ground alleged would have

21  been denied.

22          Movant also argues that his counsel should have objected to the presentence

23  report on grounds that it wrongly stated that he had a 1993 conviction for possession of cocaine

24  base.  Movant contends that this was his brother's conviction.  Movant  also contends that his

25  counsel should have argued that he should receive only one point for his 1996 illegal entry

26  conviction because he did not do any probation or jail time for this conviction.  Movant also

10

1   argues he should not have received a point for an unlicensed driver conviction because

2   information regarding this conviction was unknown.

3          Movant was provided with a copy of the presentence report prior to sentencing.

4   See Trancript from September 16, 2003, sentencing, p. 485.  At the sentencing hearing, movant

5   himself made an objection to the presentence report: "Yes.  But they are increasing two points in

6   that report.  In the case that was done in Stockton where I made an agreement that there wasn't

7   going to be an increase."  Id., p. 485.  Based on this statement, the court found that movant had

8   read and understood the report.  Id., p. 486.

9          Movant does not claim that he raised with his counsel any of the objections he

10  now claims counsel failed to raise.  Movant was aware of these objections because he had

11  received and read the report himself.  In addition, other than his conclusory allegations movant

12  provides no evidence to support his claims.  Movant presents no evidence, for example,

13  demonstrating that the 1993 conviction was his brother's conviction.  "Merely conclusory

14  statements in a § 2255 motion are not enough to require a[n] [evidentiary] hearing."  United

15  States v. Johnson, 988 F.2d 941, 945 (9th Cir. 1993).

16         Accordingly, movant's claim that counsel was ineffective for failing to object to

17  the presentence report on the grounds alleged above should be denied because it is unsupported.

18         Accordingly, IT IS HEREBY RECOMMENDED that:

19         1.  Movant's October 26, 2005, motion to vacate, set aside, or correct his sentence

20  pursuant to 28 U.S.C. § 2255 be denied; and

21         2.  The clerk of the court be directed to close the companion civil case No. CIV S-

22  05-2158 MCE GGH.

23         These findings and recommendations are submitted to the United States District

24  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty

25  days after being served with these findings and recommendations, any party may file written

26  objections with the court and serve a copy on all parties.  Such a document should be captioned

11

"Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within ten days after service of the objections.  The parties are advised that failure to file objections within the specified time waives the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: 10/06/08

/s/ Gregory G. Hollows

_____
UNITED STATES MAGISTRATE JUDGE

sosa.257